May it please the Court, Scott Hunt appearing on behalf of Plaintiff, former Chief of Police of the City of Corvallis, Pamela Raskowski, and of course that position is critical in this case as a public official. The three claims in this case, all for purposes of appeal, are determined by an examination as to whether there was evidence of actual malice. Counsel, let me direct you if I made a four specific statements. Some of the statements in my view seem to be those of opinion, some seem to be true, or at least not reckless, but there are four that I'd like you to address. The first two are on Excerpt of Record 74, one that the plaintiff made studies disappear. The second, whether the system that she selected does not work as advertised, that is, there's evidence that maybe she isn't the one who selected it. The third is on Excerpt 77, CPOA has continuously made attempts to share our concerns. And the final one on Excerpt 98, that much of the information in the packet is inaccurate, incomplete, and misleading. So what I'm interested in on those, which in my view are factual statements, where in the record specifically is there evidence of malice, that is, reckless disregard or knowledge of falsity? Well, the first question you asked about, the first question was the records disappeared as to the hundreds of thousands of dollars of consultant's reports and studies. And the defendant got that wrong when it said we did not deny that they would disappear. On Plaintiff's affidavit ER 128, she states straightforward that that never happened. And she goes on to describe reports cited by Mr. Carson in his deposition, the Gilmartin and Harris study and the Dr. Johnny Kane study, and demonstrates in her affidavit that one, those weren't studies, and two, they were not reports that disappeared. At 128, she talks about the CPOA being involved in selecting the consultant, the planning of the project, and having received the committee reports and having reports of training and having received survey results. So as to the reports disappearing, I think that's one of the examples of actual malice in that it's very simple that they assert something happened knowing it did not happen. And if you look- Disappeared is one of those opinions. Well- You know, it's forever happening. Indeed, they've been studied in the Ninth Circuit by high-level commissioners. The one could say stuff disappeared. Congress ordered them, the commissioners issued them, there they are, they went nowhere. They didn't disappear in the Harry Potter waving a wand sense, but they disappeared. Right. And the question is, is it capable? Not is it, under Oregon law, the question is, is it capable of a defamatory meaning? And if it's interpreted as they literally would be, not by a wand, not Harry Potter, but by the chief of police taking them and hiding them, putting them where they could not be found, they literally disappeared as in she did what it took to take them and make them unavailable. They could not be found. I might be wrong, but that doesn't sound precisely like Oregon law. Because in most opinion language, in most color language, colorful language, it's always capable of some kind of defamatory meaning. But the question here, I don't know if you have a favor to say, is actual malice. Right. So if I say, they disappeared. Well, it seems like- Am I actually being malicious? Or am I using a word that could be taken to mean that she actually did it in a wasteful manner? I think we're combining two concepts there. One is opinion. One is actual malice. As to opinion, it's capable of being interpreted as a defamatory statement based upon  They actually literally were taken and hidden. That's as to the opinion aspect. As to the actual malice aspect of it, you have to look at what did they know and when did they know it. Before we run out of time, I want to go through these other ones. The second one is the record system she selected and she asserts that she didn't select it at all, assuming it didn't work and that it was lousy. It was the city manager's job. Now, you assert in the brief that the defendants knew about the selection process in which the city manager decided, but where in the record does that appear? It's in plaintiff's affidavit at ER 130, Your Honor, where she says the selection process was corroborative effort and CPOA was appraised of the selection process beforehand. Then references to attachments to her affidavit that go into great detail as to that selection process, which establishes that it was a corroborative effort, it wasn't her selection, and it was a unanimous committee recommendation. That I think is the clearest example of the ones you have asked me to address, where if you look carefully at her affidavit, it kind of comes down to what did CPOA know and when did it know it? If you look at her affidavit, they did know as to the selection process and who recommended it and whether or not it was unanimous, they did know of it, at least as a question of fact at this level to the actual malice of that one. The shared concerns is one that I think again shows actual malice in that if we look at But why is it defamatory? That's actually one of my issues with that statement. It's a factual statement, but whether they did or did not share their concerns, why is that capable of a defamatory meaning? I'm sorry, I didn't mean to speak obviously. It's in the context of the allegation of dishonesty. It's in the context of, it's used two times at ER 77 and 92 and the first time it's in the context of saying for both the police chief and the city manager to deny knowledge, the knowledge of these things we have brought up is dishonest because we have continuously brought them these concerns. So it's in the context of pointing out a dishonesty on her part. In ER 92, it's in the context of one of the major concerns, major issues the CPOA has with her is the lack of honesty and that we have as a police department had to deal with her repeatedly on this issue, this issue being the lack of honesty over the years. So it is a factual statement and to say that she's dishonest to not know about it because we have dealt with her about her alleged dishonesty over the years when both of those allegations are denied in her affidavit at pages 135, I'm sorry, 137 and 145 is evidence of actual malice because they knew it didn't happen when they stated it happened. I have a minute 20 left. I'd like to reserve that for request. Thank you, Mr. Hunt. Good morning, Your Honors. Sarah Drescher representing the Corvallis Police Officers Association and the Teamsters Local 223. All three of plaintiff's claims require showing actual malice. Plaintiff has not put forth any evidence of actual malice. In fact, the only evidence in the record shows that defendants subjectively believed every single statement they made about plaintiff to be true. Because plaintiff has not put forth any evidence of actual malice, it's unnecessary. It doesn't entirely matter if they subjectively believe that because under Oregon law, there are two opportunities to prove malice. One is actual knowledge and the other is reckless disregard of the truth. So isn't either one of those two a sufficient showing of malice? Yes, Your Honor. That is correct. The reckless disregard, however, shows that there were obvious reasons to doubt the truthfulness of the statements. Plaintiff's only ---- We're here on summary judgment, right? I'm sorry. We're here on summary judgment. Correct, Your Honor. So if the evidence can be viewed in two different ways and one of them is in favor of the plaintiff, isn't that the way we have to view the evidence? That's correct, Your Honor. Okay. Well, would you go back to the statements that I was discussing with the opposing counsel and explain why the evidence could not be interpreted in her favor? For example, on making the studies disappear, her affidavit says it didn't happen. There's also a sworn statement that it was defendants who were involved in the studies that disappeared and there was evidence that the leaders had a personal grudge against her because they'd been demoted. Couldn't a reasonable jury conclude from that that there was either knowledge or reckless disregard of whether that statement was true? No, I don't believe so, Your Honor. And the reason is because all plaintiff has produced is her statement that that didn't happen. Simply showing falsity is insufficient. But you've ignored half of my question, though, which is that the statement isn't just that she didn't do it, that the defendants were involved in it and that they held a personal grudge against her supplying a motive to not care whether this statement was true or false when made. Well, in regards to the ill will of the defendants toward the plaintiffs, the courts have found that's insufficient to establish the reckless disregard standard. So I don't think the ill will. That's true by itself, but isn't there also evidence that defendants were involved in the studies? Were involved in the studies? No, there's not. In fact, the documents that plaintiff has put forth are not addressed to the defendants and they're released after the statements have already been made. All of plaintiff's evidence that she's produced in this case is rebuttal evidence. It can't logically show that defendants had that information about how the studies were made and who actually recommended the records management system because they're all released after the statements were made. And if you look at those documents, none of them are addressed to the defendants. They're all addressed to either the city manager and confidential memos, and there's one that says to all those concerned. But there's no evidence plaintiff has put forth that shows that that got in the hands of the defendants. In fact, if you read the document itself, it's clear that it wasn't sent to all city personnel. It was only sent to those who were involved in the selection of the records management system. Counsel, the item that concerns me most and has concerned me most is the, let's call it the system item. Now, as to that, the defendants made an absolute declaration. She was stating that she bought the system against the, I don't know what they say, unanimous or strong recommendation of the study committee. Never mind the city manager thing. I understand the city manager probably has to approve every purchase ultimately. That doesn't make much difference to me. What do we do about that statement? I mean, they made an absolute statement. It seemed to be 180 degrees out of sync with the truth. And I didn't see anything here that indicated why they thought that was true. Okay. Two points on that, Your Honor. First of all, plaintiff has the burden at this point to come forth with evidence that they didn't believe it was true or acted with reckless disregard. And it sounds pretty reckless to make an absolute statement. The committee did act when this widespread committee actually did not act. Well, and if you'd like me to address the evidence itself, again, I don't think plaintiff has evidence that they knew that statement to be false. But the evidence itself actually shows that the committee was not signed off on by all committee members. In fact, one of the committee members refused to sign the recommendation. And there's a letter in the record from that committee member saying, I have serious doubts as to this system. I have serious concerns. Wait a minute. Well, wait a minute. Let's say you've got a five-person, ten-person committee and two people refuse to sign the ultimate report. Surprise. But eight people say, this is the committee recommendation. I think that's the way Robert's Rules usually works. It's usually a majority or something like that. Okay. So the committee says, we recommend this system. All right? Two people don't agree with it. They say the committee recommended against it. Now, just explain how we get the element. Because they said the county committee. If you look at the statement, they said the county committee. Excuse me? Statements of the what? They said the county committee. In their statement, the defendants did. And sure enough, if you look at the documents plaintiff has produced, although a committee did select this and there was disagreement by at least one committee member, the county, meaning the county fire departments, did not sign off on this. And you will see in the memorandum. It doesn't say a county committee. It says a county-wide committee, which suggests that people from different towns might have been involved in it. When you use the word county, it sounds like it's the arm of the political  Those are different, aren't they? I apologize, Your Honor. You're correct. It was a county-wide committee they mentioned in the press release itself. And all that suggests to an ordinary reader is that they didn't pick everybody from one town. Well, I think I'm going to show that that's a reasonable belief because the documents itself show that there were county affiliates that did not sign off on this record management system. So what? So there's no evidence. What did the committee do? I'm sorry, Your Honor? What did the committee recommend? The committee recommended a vision system for the records management system. Which is the one that was purchased. Correct, Your Honor. And they said, the county committee said not to get that. Did they not? The committee that signed off on it said there were problems with the county affiliates. The fire departments in the county did not agree on this record system. But the excerpt of Record 74, the statement is, the county-wide committee, and I'm going to leave out a few words, strongly recommended against the system that Chief Roszkowski eventually selected anyway. That's a reasonable belief, Your Honor. There's no evidence. It's plaintiff's burden, remember, to show the evidence at the stage. Not just some evidence, but clear and convincing evidence that the defendants knew that. No, it's evidence from which a jury could find that it's been proved clearly and convincingly. And you're correct, Your Honor. But there's a scintilla of evidence at this stage is insufficient. And I don't believe that that is evidence that the defendants, at the time they made the statements, knew the statements to be false. Plaintiff hasn't produced anything that showed how the records management system worked that was provided to the defendants before they made that statement. And that's true with every single statement they made. She comes up with it. How about they were just reckless? There was a county-wide committee. The committee made a recommendation. I assume that was a county-wide committee recommendation. It was known. And they said precisely the contrary. Why isn't that just plain reckless? Because there's no evidence that they knew that was the way it worked. They are asking. Then they knew either they had to know either that they didn't know anything and were making a statement anyway, regardless of what the truth might be. And that's pretty reckless. Or they had to know it was false. I don't see how there's an innocent explanation. I disagree. That's not meeting the standard, Your Honor. In the New York Times Sullivan case, that's exactly what the plaintiff said. They said the New York Times had previous articles in their own files, which would have proved the falsity of the statements. And the Supreme Court said that's not enough. Let me ask you before you. Negligent rather than reckless? Is that what you're saying? Sure. Even if you wanted to find this was negligent, they should have gone and investigated. That still doesn't make sense. Let me ask you before you run out of time about the final statement where it says that CPOA has continuously made attempts to share our concerns with the plaintiff. In that case, they alone really are in a unique position to know whether it's true or false. The plaintiff says it's false. The meeting minutes don't show any of it. So why can't a jury believe that it's highly probable that they knew that it was false, since it was their own actions that were in question? And she says this never happened, and the meeting minutes don't show it. Well, I think there's only certain meeting minutes in there. And if they had not gotten a meeting, there would be no meeting minutes. In fact, I think the record shows that they did try to make these attempts and simply weren't aware. But where does the record show that? Page. Page number. Where does the record show that they actually made attempts to share their concerns with the plaintiff? It doesn't, Your Honor. If they had gotten a meeting, it would be in the record. Where does it show that they tried to get a meeting so that that statement might be true? Well, for example, in several of the press releases, they say we have been. Which number, please? I don't have it in front of me, Your Honor. I'm sorry. I can get that for the court or address it in a supplemental memorandum. But in their press releases themselves, they say we've been trying to get this issue before City Council. I believe it's in the third press release. They say we've been trying to get. Not City Council. The quote is that they have continuously made attempts to share their concerns directly with her, the plaintiff. Yes. And she says that is untrue. They never tried to talk. They never talked to me about it. And where is there evidence that that statement is true? Your Honor, it's only in the press releases themselves. And, again, I don't think the plaintiff has produced evidence that they believe that statement to be false. In fact. But how could it be otherwise? If I say I've been trying to meet with you and that's false, I have to know it's false. I'm the one who allegedly is trying to meet with you. But it's my burden to show that it's false at this stage. That's really tough to ask, right? I mean, I say I came to your office and tried to meet with you. And you say never happened. Now, why can't a jury believe you that it never happened? You're under oath. You say it never happened. And I say it did. Isn't that something for a jury to decide? I disagree. Even if your Honor wanted to find that that's a question of fact, I don't think that's sufficient for a plaintiff to meet her burden in this case. She has to prove sufficient evidence from which a clear and from which a jury could find by clear and convincing evidence that the defendant subjectively believed that statement to be false at the time they made it. How could I not? If a jury finds that I'm lying and you're telling the truth about who or vice versa about whether we tried to meet, how can they believe something other than that I knew that I was lying? I think the evidence in the record is that the defendants, when they were asked about that statement, said we believed it to be true. And I can cite you to pages in the record where they said that. So you have the defendant's statement that says we believed everything we said in the press release to be true at SDR 77. We removed anything we didn't feel 100 percent comfortable with. The question is whether a jury has to believe that or whether they can believe the plaintiff. Well, I think you're right. They could believe either one, but I don't think it's sufficient evidence. And this is a very high burden because it's First Amendment speech we're talking about, a political, a public official and the performance of her official duties. It is a very high burden for a reason, because the Supreme Court has identified this as constitutionally protected speech. And I believe I'm out of time. Thank you, Your Honors. Thank you, Ms. Drescher. Mr. Hunt? Three points, if I may. The subjective belief that opposing counsel referred to is post-litigation statements, that they didn't remove anything that they didn't believe, and the St. Amant decision at 732 says that that isn't sufficient to win, and then goes on to discuss the types of evidence that equals actual malice. Plaintiff, I'm sorry, opposing counsel referred to no documents existing establishing CPOA's knowledge of the selection process and the recommendation of the committee. Attachments K, L, and M to plaintiff's affidavit are all documents dated in 2000, four years prior to the statements made, the defamatory statements in the press releases. And as to Judge Graber's questioning about the sharing of concerns and whether they must have knowledge of their own actions, and should the jury be able to decide whether it's a lie or not, that is precisely the argument we are making. And if the court looks to the case Richmond v. Thompson, which is cited just briefly in our briefing, it's a Washington Supreme Court case, it addresses that precise type of situation, Your Honors, where the police officer is accused of having pushed the defendant and having made statements about blowing his brains out, and the denial of those actions was sufficient to have evidence of actual malice. Thank you very much. Thank you, Mr. Hunt. Mr. Escher, thank you. The case has been submitted. We'll stand at recess for the morning.
judges: Fernandez, Silverman, Graber